UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KIRK CAMERON JONES,

    Plaintiff,

v.                                                          CAUSE NO. 3:19-CV-166 DRL-MGG

KEVIN A. RAMOS, *et al.*,

    Defendants.

## OPINION & ORDER

Although admittedly lacking good cause for not serving the defendants over the course of about 240 days—far more than the 90 days afforded by Federal Rule of Civil Procedure 4(m)—Kirk Cameron Jones sought amnesty in the form of a permissive extension.

He had already been given three (more than adequate) opportunities to serve process. He let the 90 days allowed by rule pass, aware that the complaint was filed on the eve of the statute of limitations and without the prospect of a tolling agreement to buy more time. The New Jersey federal court gave him another 40 days, warning him that the case would be dismissed without service, but he watched that opportunity slip away too. After transfer to this court, he waited more than 100 days and after a motion to dismiss was filed before retaining new counsel, who then worked diligently to address the issue. Not a single defendant evaded service throughout this time.

These weren't circumstances over roughly 240 days[1] that justified a permissive extension under this circuit's analysis, *see Cardenas v. City of Chi.*, 646 F.3d 1001, 1006-07 (7th Cir. 2011), so the court dismissed this case, *see, e.g., Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988) (case dismissed for lack of service 143 days after complaint); *Friend v. Lloyd & McDaniel, PLC*, No. 4:19-CV-6, 2020 U.S. Dist.

---

[1] The defendants were served on different dates between June 21 and June 27, 2019—238 to 244 days from the complaint's filing.

LEXIS 8918, 6-7 (N.D. Ind. Jan. 16, 2020) (Moody, J.) (case dismissed for lack of service 160 days after complaint); *Kapitan v. DT Chicagoland Express Inc.*, 2013 U.S. Dist. LEXIS 96765, 2-4 (N.D. Ind. Oct. 15, 2013) (Lozano, J.) (case dismissed against a party for lack of service 190 days after amended complaint). He now asks the court to reconsider.

Since appellate rule amendments in 1993, proper classification of motions to reconsider stems largely from their substance. *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008); *Borrero v. City of Chi.*, 456 F.3d 698, 701 (7th Cir. 2006); *cf. Carter v. City of Alton*, 922 F.3d 824, 825 n.1 (7th Cir. 2019) (construing motion based on timing when movant failed to identify rule) (citing pre-1993 case); *Sease v. Darko*, 795 F. Appx. 454, 458 (7th Cir. 2019) (construing motion under Rule 60(b) based on timing when filed too late to be Rule 59(e) motion). Although Mr. Jones filed his motion within the 28 days allowed under Rule 59(e), he hasn't argued that the court made an error of law or offered newly discovered evidence that substantively would fall under Rule 59(e). *See Obriecht*, 517 F.3d at 494. He seeks reconsideration under Rule 60(b) instead. The court proceeds accordingly.

Rule 60(b) permits the court on just terms to relieve a party from a final judgment. "Relief under Rule 60(b) is an extraordinary remedy granted only in exceptional circumstances." *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011). Relief is limited to the grounds specified in the rule or extraordinary situations. *Williams v. Illinois*, 737 F.3d 473, 476 (7th Cir. 2013). Mr. Jones seeks relief for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), and the catch-all of extraordinary circumstances, Fed. R. Civ. P. 60(b)(6) ("any other reason that justifies relief"). *See also Buck v. Davis*, 137 S. Ct. 759, 777-78 (2017) (Rule 60(b)(6) limited to extraordinary circumstances).

At oral argument on the motions to dismiss, Mr. Jones explained that he endeavored to obtain information (from New Jersey counsel) to lay bare the reasons for the delay in service and establish good cause in the face of the dismissal requests in Indiana (Tr. 18-21, 23-24). Mr. Jones had the opportunity to share that information in response briefs, and even at the time of oral argument. In

2

fact, he had many months to develop that record. That was not forthcoming, leaving Mr. Jones at oral argument to confess the lack of good cause (Tr. 23-24). He was wise to do so, but that meant he wasn't a candidate for automatic grace. *See* Fed. R. Civ. P. 4(m); *Henderson v. United States*, 517 U.S. 654, 662 (1996); *Cardenas,* 646 F.3d at 1006; *see also Geiger*, 850 F.2d at 333 (plaintiff has the burden).

Mr. Jones now seeks another do-over—this time not just for service, but for his defense to the motions to dismiss. John Wooden coached his successful UCLA teams that if you don't have the time to do it right, you won't have the time to do it over. That winning philosophy seems apt here.

Now isn't the time to try to introduce facts that could have been presented before this court's ruling in February. "Rule 60(b) motions cannot be used to present evidence that with due diligence could have been introduced before judgment." *Rutledge v. United States*, 230 F.3d 1041, 1052 (7th Cir. 2000); *see Heft v. Moore*, 351 F.3d 278, 282 n.1 (7th Cir. 2003) (declining to consider affidavit filed with motion to reconsider); *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (failure to submit facts with earlier motion "foreclosed" reconsideration); *see also Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018) (reconsider only "when truly new facts come to light"). Mr. Jones offers nothing but old facts that he could have shared sooner on multiple occasions; and that forecloses reconsideration.

To be sure, the court is not insensitive to the personal circumstances that New Jersey counsel faced in late 2019 and early 2020, and regrets the family's loss, but the reality is that Mr. Jones had more than sufficient time to perfect service well before then and could have offered his explanation of good cause for the delay in service before or after then. His counsel (in either venue) was never personally incapacitated. *See Dickerson v. Board of Educ.*, 32 F.3d 1114, 1118 (7th Cir. 1994) (personal problems, including a family member's illness, not enough to demonstrate extraordinary circumstances to vacate dismissal). Briefing on the motions to dismiss occurred from June 10, 2019 until September 1, 2019. Oral argument ensued on January 24, 2020. Even thereafter, faced with

specific questions from the court about good cause, Mr. Jones had ten days before the court ruled on February 3, 2020. He could have requested an extension, surreply, or supplement. He didn't. After nearly seven months, the choices here can't be described as mistakes, inadvertence, surprises, excusable neglect, or extraordinary circumstances.

An attempt at a deeper analysis leaves this reconsideration motion wanting. Mr. Jones hasn't argued that the court committed a manifest error of law or fact. *See Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008). Mr. Jones says the judgment should be set aside for mistake, inadvertence, surprise, or excusable neglect, but he doesn't say which one or why. It's not the court's job to develop his argument. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)); *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1999).

Mr. Jones skips this step of bringing his argument within Rule 60(b)'s parameters and invites the court merely to rerun the calculus on Rule 4(m)'s option of a permissive extension, albeit based on information he could have adduced before. First things first: Mr. Jones hasn't established a mistake or inadvertence on the court's part or his part; it can be either. *See Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018). After the New Jersey federal court issued its order warning Mr. Jones of dismissal without service, he can't claim he was surprised. That leaves excusable neglect.

Any neglect on this record (even as amended by affidavit) comes without excuse. Mr. Jones hasn't cited the standard or even tried to argue how his conduct meets the standard. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1992); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006); *Robb v. Norfolk & W. Ry.*, 122 F.3d 354, 361-62 (7th Cir. 1997). The delay was not excusable when it was within his reasonable control, when it was more than twice the time allowed by rule, when he had prior warning to correct it, when it has pushed this proceeding out by nearly a year now, when he had adequate time to present facts and argument for good cause, and when

good faith and good cause remain absent. Providing materials to insurance adjusters to ready discussion over settlement is not an excuse to ignore federal rules or a federal court order. *See, e.g., Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 229 (7th Cir. 1991) (negotiations over substituting defendants was not excusable neglect); *Simon v. Pay Tel. Mgmt., Inc.*, 782 F. Supp. 1219, 1226 (N.D. Ill. 1991) (settlement negotiation was not excusable neglect for non-compliance with rules or court orders).

Even if the court worked outside Rule 60(b)(1) and indulged this request under Rule 60(b)(6), the court isn't so sure this helps Mr. Jones from what it can divine of the motion. Rule 60(b)(6) remains "more open-ended," *Pearson*, 893 F.3d at 984, and gives the court "wide discretion," *Buck*, 137 S. Ct. at 777. Rule 60(b)(6) acts as a reservoir of equity to achieve justice. That said, being mutually exclusive to the other Rule 60(b) subsections, it remains confined to truly extraordinary circumstances. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988). It isn't enough, for instance, for the record to demonstrate mere mistake or excusable neglect. *See Mendez v. Republic Bank*, 725 F.3d 651, 658-59 (7th Cir. 2013). There must be, as the rule says, other reasons that justify relief.

The need to obtain Indiana counsel isn't an extraordinary circumstance. Indeed, parties and federal practitioners find lawyers in other states all the time. They have multiple resources available to them to identify appropriate local or substitute counsel. That process takes at most days, not months. Mr. Jones says his counsel began the search for Indiana counsel even before the change of venue because an Indiana venue was a "distinct possibility," and his predilection was for a member of the American Association for Justice. If true, Mr. Jones could have retained Indiana counsel long before the change of venue occurred. The AAJ maintains a website that allows one to search its members in any city or state.[2] Even if this were a reasonable limitation on optional counsel, a search today instantly identifies eight AAJ member lawyers in South Bend alone—all known to this court. A phone call

---

[2] *See* https://directory.justice.org/index.asp?access=public.

thereafter, and this process is well underway. Delaying service to find new counsel and taking months to do so—after a federal court has ordered service or face dismissal—isn't mistake, inadvertence, surprise, excusable neglect, or an extraordinary circumstance. *See* Fed. R. Civ. P. 60(b)(1), (b)(6).

Indeed, based on the information provided on reconsideration, the prejudice to the defendants seems more manifest than perhaps the original record let on. Matching up to a factor under *Cardenas*, 646 F.3d at 1006-07, Mr. Jones argued originally that the defendants had notice of the suit from the beginning (ECF 37 at 5-6; Tr. 25) and does so here again (ECF 53 at 3), but that's not the case at all it turns out. No summonses were served for about 240 days, so let's put that aside for the moment because Mr. Jones is talking about other notice—actual notice. But there was no prior notice to Jerilynn Langwith (or her insurer) of a suit on this record. No prior notice went to Daniel Waterhouse on this record either. The "new" affidavit also offers no evidence that Uber Technologies (or its insurer, James River Insurance) received notice of any complaint for about 240 days. Plymouth Rock Management Company insured Kevin Ramos. Although its claim adjuster had initial communication with New Jersey counsel, that appears to have largely ended when the insurer refused to enter into a tolling agreement. When the insurer requested, on January 10, 2019, a courtesy copy of any complaint and summons that might come—well after they had been filed mind you—Mr. Jones never responded to that request through counsel, much less provided such a copy. The insurer's last communication from Mr. Jones was on October 25, 2018. For all the clamoring of notice, Mr. Jones passed up an easy opportunity (albeit for an insurer, not the party). With insurers closing files, the statute of limitations seemingly having run, and no cause to retain counsel, witness memories would naturally fade, video recording of the accident would be long lost, and evidence would necessarily grow ever stale.

To the extent there's any invitation to revisit the Rule 4(m) factors, the court holds that the case has worsened for Mr. Jones, not improved. The court's prior findings that certain defendants had notice of the suit before service and separately that they experienced no real prejudice (ECF 42 at 14)

must be revised accordingly, aligning the factors in total even more convincingly against a permissive extension. *See Cardenas,* 646 F.3d at 1006-07. The record, even if amendable through information that should have been presented before, establishes neither good cause nor a sound basis for a permissive extension under Rule 4(m)—much less a basis for invalidating the judgment under Rule 60(b). Rather than an extraordinary circumstance to vacate the judgment, there is additional cause to keep it.

Mr. Jones argues (with New Jersey counsel's sworn plea) that he should not receive the ultimate punishment of dismissal for his settlement preparations, but that too isn't an extraordinary circumstance under Rule 60(b)(6). The court has weighed the "risk of injustice to the parties" and the "risk of undermining the public's confidence in the judicial process," *Liljeberg*, 486 U.S. at 864, and those considerations favor holding Mr. Jones accountable for his inaction, his choice not to serve or provide the defendants with any notice of the suit for about 240 days (though butting against the statute of limitations), and disregard of the federal rules and court order. The affidavit submitted in reconsideration "amounts to a plea to disdain the [Federal] Rules of Civil Procedure when they have consequences. Consequences are the goads to compliance; to use adverse effects as a reason to overlook the requirements is to reduce the incentive to comply and make litigation even longer and more complex than it is"—exactly what has transpired here. *Powell v. Starwalt*, 866 F.2d 964, 966 (7th Cir. 1989); *accord Tuke v. United States,* 76 F.3d 155, 156 (7th Cir. 1996) ("An attorney who files suit when the statute of limitations is about to expire must take special care to achieve timely service of process, because a slip-up is fatal."); *see also Pioneer*, 507 U.S. at 397 (a party "cannot now avoid the consequences of the acts or omissions of [his] freely selected [attorney]") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)). In short, Rule 60(b) relief isn't appropriate here.

## CONCLUSION

The defense moved to strike New Jersey counsel's affidavit. The defense raises fair points, but the court can distinguish legal argument within the affidavit from facts and can disregard the

occasional error; and the remaining information fails to establish good cause under Rule 4(m) or an extraordinary reason to justify relief under Rule 60(b), even if admitted in full. *See Rodgers v. Gary Cmty. Sch. Corp.,* 167 F. Supp.3d 940, 948 (N.D. Ind. 2016) (DeGuilio, J.). The court thus DENIES the motion to strike (ECF 49), though it GRANTS the motions to join the strike request (ECF 50-52).

Mr. Jones hasn't established mistake, inadvertence, surprise, or excusable neglect, Fed. R. Civ. P. 60(b)(1), or extraordinary circumstances to vacate the judgment, Fed. R. Civ. P. 60(b)(6). Except as specifically noted, the court DENIES the motion to reconsider the court's judgment dismissing this case (ECF 44) and GRANTS the joinders to oppose it (ECF 48, 52). The judgment must stand on this record.

SO ORDERED.

May 20, 2020                                  *s/ Damon R. Leichty*
                                              Judge, United States District Court